UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYNN L. JACKSON,<br><br>    Petitioner,<br><br> v.<br><br>JEFFREY A. UTTECHT,<br><br>    Respondent. | NO. 2:18-cv-00108-SAB<br><br>**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF** |

  Before the Court is Lynn Jackson's (Petitioner) Petition for Writ of Habeas Corpus by a Person in State Custody, ECF No. 3. Petitioner is an inmate at Coyote Ridge Correction Center, where he is serving a sentence for second-degree attempted rape of a child and fourth-degree assault. Petitioner requests this Court issue a writ of habeas corpus, arguing his conviction was obtained in violation of state laws and the United States Constitution. For the following reasons, the Court denies the petition for federal habeas relief.

## BACKGROUND

  The Washington Court of Appeals[1] summarized the facts underlying Petitioner's conviction as follows:

> Mr. Jackson was engaged to marry DM. She had a 13–year–old daughter, MM. The charged incident occurred on March 15, 2014. That day Mr. Jackson drove MM from her mother's house in Pullman to a house he owned in Clarkston. The house was one that he had

---

[1] *State v. Jackson*, 191 Wash. App. 1023 (2015).

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 1**

purchased to repair and re-sell. Only two rooms were furnished. MM went in the bedroom to use the computer.

Mr. Jackson came in and laid down on the bed, saying that he had a headache. He asked MM to join him on the bed. She got on the bed and played a game on her telephone. He started tickling her and she fell off the bed to the floor. There she saw a handgun. Mr. Jackson got up, locked the door to the bedroom, and picked the gun up. He threw[2] the child onto the bed and put the gun next to her. He climbed into the bed and started kissing her chest and put his hand under her shirt. She objected and tried to push him off; he told her that he had not planned on doing anything, but he could not help himself. He then asked how she would react if he raped her. MM continued to struggle. Mr. Jackson started crying and got off her. He took the gun and handed it to MM, asking her to shoot him. She refused and pushed the gun back at him. After both calmed down, they left the house to shop. MM did not report the incident because she knew it would prevent her mother from marrying Mr. Jackson.

Mr. Jackson had set a game camera up in the bedroom to periodically take pictures of activities on the bed. Much of the encounter with MM was captured by the camera and downloaded to a computer. At trial, MM described what was happening in the pictures.[3]

DM, MM, and Mr. Jackson went to Las Vegas for the older couple to marry on April 1. That morning, Mr. Jackson was alone with MM and told her that if he married DM, he would end up raping MM and encouraged her to tell that to her mother. The child then told her mother at breakfast about the threat and disclosed information about a series of sexual encounters over the years. The wedding was called off and DM returned to Pullman with her daughter on April 3. Prior to leaving Las Vegas, she called attorneys on the advice of her sisters. One of the attorneys then arranged for the two to have a joint meeting

---

[2] [Court's footnote 1] The trial judge later described this as a "body-slam." Report of Proceedings at 265. The judge also noted that the entire incident lasted nearly an hour.

[3] [Court's footnote 2] The camera also captured sexual encounters between Mr. Jackson and three women, one of whom was DM. None of the photographs were used at trial.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 2**

with both Idaho and Washington detectives in Lewiston, Idaho, on April 4.[4]

Present to meet with the pair were Detective Jackie Nichols of the Asotin County Sheriff's Office, a victim advocate from Asotin County, and Lewiston Police Department Detective Jason Leavitt. MM preferred to talk solely with the female detective, so Detective Nichols interviewed her while Detective Leavitt spoke with DM. Leavitt requested that DM call Mr. Jackson to talk about the incidents when MM was younger in Lewiston and record the conversation in the detective's presence. Detective Nichols was advised about the plan and told DM to avoid any discussion of incidents in Washington. DM and Mr. Jackson spoke with Leavitt listening in and passing notes to DM suggesting questions to ask. Detective Nichols in the other room could "basically hear" what was going on. Report of Proceedings (RP) at 164–165.

After the telephone conversation and the interview with MM were complete, the two detectives went to Mr. Jackson's house in Clarkston and spoke with him. He agreed to allow the interview to be recorded. He told the detectives that he had fallen in love with MM and had asked her on March 15 what she would do if he attempted to rape her. When she began crying, he let go of her wrists and handed her a gun and asked her to shoot him. She threw it away. He also discussed earlier incidents in Washington and Idaho that MM had discussed with the detective.

Charges of attempted second degree child rape and second degree assault, both alleged to have been committed while armed with a firearm, were filed in Asotin County Superior Court. Mr. Jackson waived his right to a jury trial and the matter was set for bench trial. Prior to the trial, the defense filed several motions in limine. Included in the motions were requests that the recording of the conversation between DM and Mr. Jackson not be played at trial because it was made in violation of RCW 9.73.030 and that the State's witnesses not discuss the contents of the conversation. The parties debated whether

---

[4] [Court's footnote 3] The disclosures indicated that some of the encounters occurred in Lewiston where the family had lived when MM was younger. Clerk's Papers at 3.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 3**

DM was acting as an agent of the State of Washington when she placed the phone call. The court reserved its ruling on those two motions to trial, although the prosecutor indicated he would not be playing the recording because it was too long.

DM testified at trial concerning the circumstances of the phone call she made to Mr. Jackson. When the prosecutor asked for a preliminary ruling that DM could testify to the contents of the conversation, the trial judge indicated not "at this time." The State then ceased its questioning of DM and did not call Detective Leavitt. The contents of the conversation were not admitted at trial.

Detective Nichols did testify concerning her interviews of both MM and Mr. Jackson. She was the third and final witness for the State. Mr. Jackson took the stand in his own defense as the sole defense witness. He admitted asking the rape question of MM and pushing her onto the bed, but denied that anything else occurred. When he saw that she was crying, he pulled the loaded gun out from under the covers and asked her to shoot him. He also confirmed that the incident ended after he realized that he just could not go forward with it. "I could not hurt her."

The trial court convicted Petitioner of second-degree attempted rape of a child and fourth-degree assault. The trial court sentenced Petitioner to 120 months to life in prison.

## PROCEDURAL HISTORY

Petitioner raised the following issues on direct appeal to the Washington Court of Appeals:

1. Whether the trial court erred when it allowed the State to present incriminating statements elicited by an Asotin County Sherriff's detective immediately after intercepting a private conversation in violation of the Washington Privacy Act?
2. Whether the trial court erred in failing to hold a CrR 3.5 hearing to determine the admissibility of Mr. Jackson's statement to law enforcement;
3. Whether the trial court erred when it found Mr. Jackson was "armed" with a firearm for purposes of RCW 9.94A.533(b)?

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 4**

The Washington Court of Appeals affirmed Petitioner's convictions on November 19, 2015. *State v. Jackson*, 191 Wash. App. 1023 (2015). The Washington Supreme Court denied Petitioner's request for discretionary review on April 27, 2016.

## COLLATERAL PROCEEDINGS

Petitioner filed a Personal Restraint Petition ("PRP") with the Washington Court of Appeals on October 27, 2016. Petitioner raised the following issues in the PRP:

1. Whether the trial judge violated WAC code of judicial conduct rule 2.9 ex parte communications;
2. Whether the investigating detectives violated the Washington Privacy Act RCW 9.73.030 and RCW 9.73.060;
3. Invalid consent was given to be interrogated and violation of the Fifth Amendment;
4. Prosecutor misconduct / false evidence;
5. Ineffective assistance of counsel.

The Court of Appeals dismissed Petitioner's PRP on April 18, 2017. The Washington Supreme Court denied Petitioner's request for discretionary review on October 24, 2017. The Washington Court of Appeals issued a Certificate of Finality on January 9, 2018.

Petitioner timely[5] filed a petition for federal habeas relief under 28 U.S.C. § 2254.

//
//

---

[5] The parties do not dispute the timeliness of the Petition, nor are there any facts that would indicate it is untimely.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 5**

# STANDARD

A petition for writ of habeas corpus on behalf of a prisoner in state custody is brought under 28 U.S.C. § 2254. Relief under § 2254 is limited to "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was "contrary to," or involved an "unreasonable application of," clearly established federal law as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Only "clearly established Federal law, as determined by the Supreme Court of the United States," can be the basis for relief under the AEDPA. *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "Clearly established Federal law" is the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

Under the "contrary to" clause, a federal court may grant habeas relief only if "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may grant habeas relief only if "the state court identifies the correct governing legal principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal court may also grant a writ of habeas corpus if a material factual finding of the state court reflects "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the petitioner has

the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

28 U.S.C. § 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## EVIDENTIARY HEARING

A federal habeas court's review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro v Landrigan*, 550 U.S. 465, 474 (2007). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Stated differently, if the state court record "precludes habeas relief" under § 2254(d), "a district court is 'not required to hold an evidentiary hearing.' " *Cullen*, 563 U.S. at 183 (quoting *Schriro*, 550 U.S. at 474.

If a petitioner has failed to develop the factual basis of a claim in state court, a federal habeas court shall not hold an evidentiary hearing on the claim unless the petitioner shows:
    (A) the claim relies on--
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 7**

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

## ISSUES

Petitioner raises the following grounds for federal habeas relief:

1. RCW 9.73.030-.060; Silver Platter Doctrine, Idaho Code § 18-6702(2)(e), 18 U.S.C. § 2511(2)(d), and the Fourth Amendment;
2. Invalid Consent;
3. Prosecutor Misconduct – False Evidence and Testimony, Nepotism, Conflict of Interest, Conspiracy to Defraud; and
4. Ineffective Assistance of Counsel.

## DISCUSSION

**1) RCW 9.73.030-.060; Silver Platter Doctrine, Idaho Code § 18-6702(2)(e), 18 U.S.C. § 2511(2)(d), and the Fourth Amendment.**

Petitioner's first ground of relief stems from an alleged violation of the Washington Privacy Act, Wash. Rev. Code § 9.73.030. Petitioner argues the Washington Privacy Act was violated when Detective Nichols and Detective Leavitt participated in recording a private telephone conversation between D.M. and Petitioner. Petitioner claims that a violation of the Washington Privacy Act resulted in a violation of the Silver Platter Doctrine; Idaho Code § 18-6702(2)(e); 18 U.S.C. § 2511(2)(d); and the Fourth Amendment.

Most of Petitioner's claims fall outside the scope of federal habeas review because they allege violations of state law. It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 8**

764, 780 (1990). Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Petitioner's Fourth Amendment claim also fails because Petitioner was given a fair opportunity to litigate the basis of his claim in state court. The United States Supreme Court has instructed that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481 (1976). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015).

In this case, the record shows Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim based on an alleged violation of the Washington Privacy Act. Prior to trial, Petitioner's trial counsel filed a motion *in limine* requesting the trial court prohibit the prosecution from playing any recorded conversation between Petitioner and D.M., and to prohibit any witness from mentioning anything about the contents of the telephone call. ECF No. 7-2 at 16. Petitioner's counsel also argued against the admissibility of the recording at a pretrial motion hearing. ECF No. 7-4 at 115-122. While the trial court ultimately did not rule on the issue, neither the recording nor the contents of the conversation were ever admitted at trial. *Jackson*, 191 Wash. App. at *2. The Washington Court of Appeals rejected Petitioner's claim on appeal, finding no violation of the Washington Privacy Act. *Id*. at *4.

Because Petitioner was afforded a full and fair opportunity to litigate the basis of his Fourth Amendment claim, it falls outside the scope of federal habeas review. *Powell*, 428 U.S. at 494.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 9**

**2) Invalid Consent.**

In his second ground for relief, Petitioner argues the State violated his Fifth Amendment rights when the police interrogated him without first providing him *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 (1964).

The Supreme Court has established procedural safeguards that require police to advise a criminal suspect of his rights, under the Fifth and Fourteenth Amendments, prior to commencing a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Police are required to advise criminal suspects of their *Miranda* rights only when the person is subjected to custodial interrogation by government officials. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995).

An objective test is used to determine whether a suspect is "in custody" for purposes of *Miranda*. *Yarborough v. Alvarado*, 541 U.S. 652, 662-63 (2004). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). Thus, to determine whether a suspect is "in custody," federal courts must examine " 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.' " *Yarborough*, 541 U.S. at 663 (quoting *Stansbury*, 511 U.S. at 322).

We turn now to the case before us and ask if the state court's adjudication of Petitioner's claim was "contrary to," or involved an "unreasonable application of,"

clearly established federal law when it concluded that Petitioner was not in custody at the time of his interview with Detective Nichols and Detective Leavitt.

After the telephone conversation between D.M. and Petitioner, Detective Nichols and Detective Leavitt went to Petitioner's house to speak with him. When they arrived at the house, Petitioner "ran over and unlocked the door" and told the detectives "come on in." ECF No. 7-4 at 304. Petitioner told the detectives that he was "expecting" them. ECF No. 7-4 at 234. Petitioner agreed to speak to the detectives and agreed to have their conversation recorded. ECF No. 7-4 at 304. Petitioner stated that he agreed to this because he figured he did not have anything to hide. *Id.*

During the interview, Petitioner told the detectives that he had fallen in love with M.M. and had asked her on March 15, 2014, what she would do if he attempted to rape her. *Jackson*, 191 Wash. App. at *2. When she began to cry, he let go of her wrists and handed her a gun and asked her to shoot him. *Id*. She pushed the gun away. *Id*. Petitioner also told the detectives incidents in Washington and Idaho that M.M. had discussed with the detective. *Id*. The detectives placed Petitioner in custody following the interview. ECF No. 7-4 at 243.

Petitioner did not challenge the admissibility of these statements in the trial court. The statements were admitted through Detective Nichols's testimony, ECF No. 7-4 at 234-43, and Petitioner's own testimony. ECF No. 7-4 at 303-06, 316-17.

Petitioner challenged the admission of these statements for the first time on direct appeal. *Jackson*, 191 Wash. App. at *3. The Washington Court of Appeals found Petitioner failed to preserve the issue and failed to show that the admission of these statements constituted a "manifest error affecting a constitutional right." *Id*. In the alternative, the Washington Court of Appeals determined Petitioner was not "in custody" during his interview with the detectives because the interview

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 11**

was conducted at Petitioner's home at a time during which he was not under arrest. *Jackson*, 191 Wash. App. at * 3 n.7. Consequently, the Court of Appeals found Petitioner's interview "cannot be likened to a formal arrest." *Id*.

The record supports the Court of Appeals' finding that that the circumstances surrounding Petitioner's interview do not rise to the level of a custodial interrogation. The record shows that when the detectives arrived at his home, Petitioner invited the detectives to come inside; told the detectives that he was "expecting" them; agreed to the interview; and agreed to have the interview recorded. Petitioner argues he was in custody during this interview because he "had to ask for permission to use the restroom in his own home and was escorted there by Detective Nichols." Petitioner's Addendum to Writ of Habeas Corpus at 13. Even if this allegation is true, it does not, on its own, demonstrate a restraint on Petitioner's freedom of movement to the degree associated with a formal arrest. *Stansbury*, 511 U.S. at 32. Accordingly, Petitioner's allegation fails to show that the Court of Appeals' decision was "contrary to" or involved an "unreasonable application of" clearly established federal law.

### 3) Prosecutor Misconduct – False Evidence and Testimony, Nepotism, Conflict of Interest, Conspiracy to Defraud.

#### a. False Evidence.

At Petitioner's trial, the State introduced into evidence a disk containing six hundred images captured by Petitioner's game camera.[6] ECF No. 7-2 at 49. The photographs introduced at trial showed Petitioner picking M.M. up and throwing her onto the bed, where he attempted to kiss her and touch her in various intimate

---

[6] The game camera takes sequential still photographs every two seconds if activated by motion. ECF No. 7-2 at 50. The trial court judge found the game camera was specifically and intentionally positioned by Petitioner to capture any action or motion occurring on the bed. *Id*.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 12**

places. ECF No. 7-2 at 50-51. The images also show Petitioner's conduct following the attack, where he can be seen hugging M.M. and placing his left hand on her right buttock and cupping his hand around it. *Id.* He can be seen smiling in the game camera photos at that time. *Id.*

Petitioner argues that at trial, the State portrayed these images to represent two separate attempted rapes that occurred on the same day, two hours apart. Petitioner argues the images look like they are taken on the same day because they contain time/date stamps that suggest they are from the same day, and show Petitioner and M.M. wearing the same set of clothing. However, Petitioner argues one set of photographs was actually taken about two weeks prior to the other set of photographs.

Petitioner argues that M.M.'s testimony at trial was completely false because she changed her story to conform with the State's theory of the case that two attempted rapes happened on the same day, when in reality the images are from two different days.

Petitioner's claim on this issue was first raised in a PRP to the Washington Court of Appeals. ECF No. 7-4 at 23-34. The Court of Appeals denied Petitioner's claim because he failed to object on this basis at trial, and that his assertions that the photographs were taken on different days is "simply not supported by objective evidence." ECF No. 7-4 at 31. In its order denying discretionary review, the Washington Supreme Court confirmed that Petitioner has no evidence to prove the photographs depict events that took place on two different days. ECF No. 7-4 at 84.

Petitioner's argument is that the photographs are evidence that M.M.'s testimony is completely false, and the State committed misconduct in knowingly presenting this false evidence at trial.

"[A] criminal defendant is denied due process of law when a prosecutor either knowingly presents false evidence or fails to correct the record to reflect the

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 13**

true facts when unsolicited false evidence is introduced at trial." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005). In *Napue v. People of State of Illinois*, the Supreme Court held that a conviction obtained using knowingly perjured testimony violates a criminal defendant's due process, even when the testimony in question was relevant only to the witness's credibility. 360 U.S. 264, 269 (1959).

To succeed on a claim under *Napue*, a petitioner must show (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material. *Hayes*, 399 F.3d at 984.

Petitioner fails to establish any of these three requirements. First, Petitioner fails to offer any objective evidence to support his claim that the photographs depict two incidents on two separate days. Second, Petitioner fails to show that the prosecution knew or should have known that M.M.'s testimony was false. Petitioner contends that because his public defender told him the photographs and M.M.'s testimony was false, "it would stand to reason that the prosecutor knew as well." Petitioner's Addendum to Writ of Habeas Corpus at 16. This is nothing more than speculation.

Finally, Petitioner fails to show how this evidence is material. In assessing materiality under *Napue*, the Court must determine whether there is " 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Hayes*, 399 F.3d at 984 (quoting *Belmontes v. Woodford*, 350 F.3d 861, 881 (9th Cir. 2003)). Whether Petitioner attempted to rape M.M. twice on the same day or on two separate occasions, it does not change the facts underlying Petitioner's conviction. Petitioner does not deny the conduct depicted in the photographs, he merely challenges the State's assertion that his conduct occurred on the same date.

Accordingly, Petitioner's false evidence claim is denied.

//

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 14**

### b. Nepotism, Conflict of Interest, Conspiracy to Defraud.

Petitioner requests a full investigation into an alleged conspiracy between the trial judge, Asotin County Prosecutor, and detective investigating the case. Petitioner's claim consists of nothing more than speculation and is not appropriate for federal habeas review.

### 4) Ineffective Assistance of Counsel.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). To show that this right was denied, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To demonstrate deficient performance, a petitioner must show that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts apply a "strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Id*. at 689. Courts evaluate "[t]he reasonableness of counsel's performance … from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

To demonstrate prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more challenging. *Harrington*, 562 U.S. at 105. A "doubly deferential" standard of review applies to federal habeas claims of ineffective assistance of counsel. *Knowles v Mirzayance*, 556 U.S. 111, 123 (2009). "The pivotal question [for a federal habeas court] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 15**

U.S. at 101. "When § 2254(d) applies, …[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

Petitioner first raised his ineffective assistance of counsel claim in his PRP to the Washington Court of Appeals. ECF No. 7-4 at 33. The Court of Appeals found Petitioner had failed to establish both prongs of the *Strickland* test, concluding that counsel's "strategy at trial was to mitigate the overwhelming evidence that he had attempted to sexually assault M.M. in a locked room on March 15, 2014." *Id*. The Court of Appeals noted that during cross examination of the State's witnesses and during direct examination of Petitioner, counsel tried to establish that Petitioner was tempted to assault M.M. but resisted that temptation because he did not want to harm her. *Id*. Petitioner's statements to the detectives supported this trial strategy. Challenging the admissibility of these statements would therefore have undermined the defense. *Id*. Even if counsel would have challenged the admissibility of these statements, the Court of Appeals found Petitioner had failed to prove by a preponderance of the evidence that the statements would have been excluded. *Id*. Consequently, the Court of Appeals found defense counsel's strategy was reasonable in the context of the admissible evidence against Petitioner.

Petitioner argues his counsel was deficient by (1) failing to challenge the admissibility of "all evidence and testimony" that was uncovered as fruit of the violation of the Washington Privacy Act. Petitioner's Addendum to Writ of Habeas Corpus at 18; (2) failing to "challenge evidence and testimony that he knew was false and for failing to have forensic analysis done to prove the evidence to be false." *Id*. at 19; (3) failing to raise the issue of nepotism and conflict of interest; (4) failing to request a change of venue or ask the judge and prosecutor to recuse themselves from the case; (5) failing to show Petitioner the

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 16**

evidence that was going to be used against him before the commencement of trial; (6) refusing to call Petitioner's daughter as an expert witness in his case.

After reviewing the record, the Court finds Petitioner has failed to establish either prong of the *Strickland* standard. More importantly, Petitioner has failed to show the state court's application of *Strickland* was unreasonable. *Harrington*, 562 U.S. at 101. Accordingly, Petitioner's ineffective assistance of counsel claim is also denied.

## CERTIFICATE OF APPEALABILTY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Boyer v. Chappell*, 793 F.3d 1092, 1106 (9th Cir. 2015) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted). The Court finds Petitioner has not made such a showing.

//
//
//
//
//
//
//
//
//

Accordingly, **IT IS HEREBY ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody, ECF No. 3, is **DISMISSED**, pursuant to 28 U.S.C. § 2244(d).
2. The Certificate of Appealability is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, furnish copies to counsel and pro se Petitioner, **enter judgment** against Petitioner, and **close** this file.

**DATED** this 25th day of July 2019.



_____
Stanley A. Bastian
United States District Judge

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^** 18